UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23 CR 714 RWS/NCC |
| ALAN BILL, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S RESPONSE TO DEFENDANT'S BRIEF ADRESSING INTERPRETATION ISSUES AND GOVERNMENT'S MOTION FOR FINDINGS OF FACT AND COMPLEX CASE DESIGNATION AND MOTION TO DISMISS INDICTMENT**

COMES NOW, Defendant Alan Bill, moves through his undersigned Counsel, this Honorable Court to respond to allegations presented by Government in its brief addressing interpretation issues and complex case designation and to dismiss indictment. Defendant, in support of its motion, states as follows:

    **I.    Translation Concerns**

In its brief, Government argues that Defendant has failed to object to improper translation at his initial appearances. Opposite is true. Defendant did advise all his first three lawyers, that he was not translated charges against him and that translations rendered to him were ineffective. Defendant's previous lawyers failed to convey that to court. That was one of the reasons why Defendant terminated their legal representation.

1

In addition to that, Government claims, that Defendant has engaged in discussions with court and that he stated, that he understood the proceedings. However, government has failed to submit any proof of that.

## II.      Delayed Discovery

The Government claims that delay in discovery was due to fact that undesigned Counsel requested "searchable pdf files". Government fails to state that on March 15, 2024, it advised Defendant's Counsel that she can choose to have the evidence available via pdf or load file. Despite of the fact that undersigned Counsel has requested pdf, the evidence in second production was not completely in pdf.

In addition to that, the undersigned Counsel has met with the Prosecutor to take discovery (production) in person on March 18, 2024. The Government wasn't prepared to assist her with the first production of discovery despite of fact that pdf form of the first production was also requested by Mr. Schriener.

The Government also claims that Discovery is further delayed as Government awaits action by Defendant's counsel. That statement is also incorrect as undersigned Counsel notified Government via email on April 4, 2024 when Government filed its response, that the undersigned Counsel is prepared to accommodate production via any means available.

## III.     Additional Translation and Due Process Issues

In its brief, Government admits that it failed to advise Defendant promptly of the reasons for the arrest and charges against him (See Government's brief at page 4). The Government properly

2

states that Article 9(2) of the ICCPR plainly states that: "Anyone who is arrested shall be informed, **at the time of the arrest**, of the reasons for his arrest and shall be promptly informed of any charges against him". Government in its brief adds that Defendant was afforded those rights in District on January 12, 2024. Government failed to explain, why there was a month delay since Defendant's arrest on December 14, 2023 before Defendant was indeed advised of the reasons for his arrest and charges against him.

### IV.    Complex Case Designation

The Government asserts in its latest filing, that: "The Government anticipates that Productions 1, 2 and 3 will consist of at least 850,000 pages of searchable pdf files and contain approximately 1 TB of data. In addition, the Government anticipates that Production 4 will contain at least 4 TB of data. The Government anticipates that additional productions will be made as additional evidence is received."

Most of the aforementioned large quantity of PDF files are part of Production 1. More than 99% of those files are entirely irrelevant to this case. They consist of Bill's private email messages as well as emails from mailboxes of several individuals unrelated to this case. The only connection among individuals whose privacy the Government unlawfully infringed upon is that they were customers of Bill's duly licensed and regulated cryptocurrency exchange in the Slovak Republic. Since the Government lacks any evidence of criminal conspiracy, it attempted an unlawful fishing expedition regarding the data of all individuals associated with Bill's cryptocurrency exchange activities. Subsequently, the Government presented large volumes of data obtained through this operation in this litigation, despite its absolute irrelevance to this case, with the sole intention of simulating the case's magnitude to buy time. The Government is well aware that the key evidence for the case is located

3

abroad and it won't be able to access it in time. Therefore, it resorts to unlawfully simulating the case's scope by inundating the proceedings with a large quantity of files unrelated to the case. The Government filed the indictment prematurely. The rushed proceedings occurred when the Government lacked sufficient evidence. Through this unlawful method, the Government aims to buy time through its request for a Complex Case designation to obtain evidence from abroad, which it hopes might turn the case in its favor.

What the Government presented in Production 1 is not evidence, as Defense indisputably demonstrated in its previous filing. The Government fails to address these facts at all and does not challenge them in any way.

Production 2, submitted by the Government on 29th March 2024, will be examined by the Defense forensic expert no later than April 21, 2024.

Regarding Production 3, the Government informed the Defense on 4th April 2024 that it is still in preparation. According to the information provided by the Government to the Defense, it is evident that it will likely consist of copies of devices seized from Bill at Newark Airport. The fact that it involves 1 TB of data is irrelevant since it probably represents the size of image files, which is irrelevant for determining the case's to be complex or not. Considering the volume of data contained in the devices, Defense expects to have it examined by forensic expert by May 15, 2024.

Production 4 is not yet prepared. According to the attached documents, it will likely consist of copies of 2 disk images from a server in Moldova. Given that 2 disks of 2 TB each are standard for data server mirroring, it's likely that these will be identical, making it not 4 TB but rather 2 TB of data

4

with one identical duplicate. It's essential to note that the 2 TB will represent the size of the image files of the Moldovan server disks. The size of image files does not indicate the actual relevant content of the data contained within. Neither the Government nor the Defense is clear about the exact contents of the Moldovan disks, whether they are encrypted, whether they will be examinable, or whether they will contain any data relevant to this case.

From a technical standpoint, there is currently no reason to believe that there will be a large quantity of evidence in this case. The fact that the Government generated several hundred thousand PDF files irrelevant to this case, as well as the size of the image files of the disks, has no bearing on the size and quantity of the real evidence. The Government filed the indictment prematurely and is, in fact, suffering from significant evidentiary scarcity. The case passed through Grand Jury scrutiny simply because the Grand Jury did not grasp the case's technological complexities and relied on the FBI agent's testimony, which is based more on belief than presented evidence. Through the proposal for a Complex Case designation, the Government seeks to buy time in the hope that it might obtain evidence from abroad over the course of several years, which could alleviate its evidentiary scarcity. Such conduct is an obvious abuse of rights and must not enjoy legal protection.

### V.     Clustering and Grouping of Evidence

The Government asserts in its document brief, that the admissibility of grouping and clustering for legal proceedings was extensively litigated in the District of Columbia in the case of *United States v. Roman Sterlingov, Case No. 1: 21-cr-00399-RDM*. The Government contends that in said case, the District Court rejected the defendant's Daubert challenges to the Government's use of

5

clustering and grouping techniques, affirming that such techniques are the result of reliable principles and methods.

Contrary to the Government's assertion, the District Court did not address the admissibility of grouping and clustering results in criminal proceedings in the referenced judgment. The judgment solely focused on the admissibility of outputs from the non-forensic, non-certified computer program Chainalysis Reactor as evidence for criminal proceedings.

In this case, FBI agents utilized the non-forensic, non-certified computer program Chainalysis Reactor to analyze large volumes of input and output data to identify connections between them.

The Defense contended that reliance on Chainalysis Reactor's output did not meet the Daubert test, and thus, the court should exclude all testimony and evidence based on clustering performed using the software.

The issue before the court was the use of the computer program Chainalysis Reactor and whether it complied with Daubert and the Federal Rules of Evidence. The crux of the problem was based on the fact, that the 3 heuristic methods used by Chainalysis Reactor had not been scrutinized, leaving the error rate unknown, thus precluding a determination of its reliability and accuracy.

The Government's assertion in the Response that the District Court admitted grouping and clustering as acceptable methods of digital evidence examination in criminal proceedings is false. The District Courtin in Starlingov case did not address this matter. Both the Government and the Defense in Sterlingov case acknowledged that grouping and clustering alone lack sufficient reliability. The sole point of contention revolved around whether the utilization of the outputs of the non-certified, non-forensic computer program Chainalysis Reactor, employing a combination of three heuristic methods

6

to bolster certainty from initially unreliable grouping and clustering outputs, qualifies as admissible evidence.

Additionally, it is pertinent to note that in Sterlingov case, the volume of processed data was orders of magnitude greater. Moreover, a larger quantity of known input and output addresses were encompassed in the analysis. Certain heuristic analysis methods may refine imprecise and unreliable grouping and clustering outcomes in scenarios where a substantial amount of data and adequate information regarding input and output addresses are available. Heuristic methods cannot be reliably employed with lower amount data or a limited amount of input and output address information.

Thus, the court ruling in the Sterlingov case holds no relevance concerning the evaluation of the acceptability of grouping and clustering in this case. The mentioned ruling in Sterlingov case did not address the acceptability of grouping and clustering. It is evident from the evidence itself that grouping and clustering, in their essence, lack sufficient reliability. Consequently, the FBI utilized the Chainalysis Reactor software, which employs three heuristic methods to refine the results of grouping and clustering, given the presence of extensive data and numerous known input and output addresses in that instance.

In the Sterlingov case, the FBI did not utilize the Chainalysis Reactor software to identify the output addresses. These addresses were already known to the FBI and served as input for the heuristic analysis conducted by the Chainalysis Reactor.

Grouping and clustering, in conjunction with a minimum of three heuristic analysis techniques, are applicable when large amount of data is accessible concerning both input and output addresses. Under no circumstances can grouping and clustering reliably identify output addresses if only a limited

7

amount of data is analyzed or if there exists a noticeable disparity between the range of input and output addresses. Similarly, heuristic analyses cannot be employed with a small number of investigated transactions.

The utilization of grouping and clustering alone fails to satisfy certain factors for reliability analysis under Rule 702, as per Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The inherent error rate of grouping and clustering for identifying final transactional addresses is so high that it cannot, under any circumstances, be admitted as evidence in criminal proceedings.

The application of grouping and clustering in this case yields an error rate so substantial that it does not ensure even a remotely reliable outcome.

The Government's assertion that "This case involves similar techniques to the ones used in the Sterling case" in Response is pivotal.

There is no concept of "similar techniques" in the scientific examination of evidence. Either a verified and properly documented technique known to science is employed, or it constitutes an unscientific procedure. Similarly, in forensic evidence examination, either a specific, recognized scientific technique is utilized, or the examination is conducted unscientifically, rendering its findings inadmissible in court. The government was compelled to admit that the FBI employed some form of "similar techniques" because it is well aware that the requisite conditions for employing specific identical techniques are not met in this case.

## CONCLUSION

The Speedy Trial Act requires that a federal criminal trial "shall commence within seventy days" after a defendant who has pled not guilty is charged, the charging document is unsealed, or the defendant makes an initial appearance (18 U.S.C. § 3161(c)(1)). As the Supreme Court has stated, this provision is "unequivocal." Zedner, 547 U.S. at 507, 126 S.Ct. 1976. "When a trial is not commenced within the prescribed period of time, 'the information or indictment shall be dismissed on motion of the defendant.'" Id. at 508, 126 S.Ct. 1976 (quoting 18 U.S.C. § 3162(a)(2)).

Defendant, being aware that way over seventy days have lapsed since his initial appearance, and/or charging document was unsealed, is therefore moving for dismissal of indictment filed in this case.

WHEREFORE, the undersigned Counsel respectfully requests that this Court dismisses the indictment.

Respectfully submitted,

/s/ Lenka Droscova, Esq.
Counsel for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/*s/ Lenka Droscova, Esq.*
Counsel for Defendant
Bar Number 338064CA
626 Wilshire Blvd Ste 410
Los Angeles, CA 90017