UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-CR-00714 CMS/NCC |
| | ) | |
| ALAN BILL, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ALAN BILL'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL BRIEFING REGARDING ITS MOTION TO AMEND THE PROTECTIVE ORDER**

Presented by the Court with an opportunity to present additional (or any) evidence to support its motion to amend the protective order, the Government has declined the invitation—but only after using the specter of its unsubstantiated concerns regarding Ms. Karlikova as a basis to further prolong the time before Mr. Bill's trial. Instead, it claims that the bare allegations of its sealed motion are sufficient on their own to constitute "good cause" to limit whom Mr. Bill may employ to assist in his defense and what access they may be given to the evidence the Government seeks to use against him. *See* Supp. Br. (Doc. #285) at 2. In so doing, the Government asks the Court to interfere in Mr. Bill's and his attorneys' determinations as to how to best conduct the defense of his case, with little more than vague insinuations as to how a "leak" of the discovery produced by the Government may have occurred.

Notably missing from both the Government's supplemental brief and its original motion is any evidence tying Ms. Karlikova or any other member of Mr. Bill's defense team to any alleged "leak." As Mr. Bill's sealed response explained, at least some portions of the discovery referred to by the anonymous informant have never even been transferred to Ms. Karlikova by the

undersigned, making it impossible to contend that Ms. Karlikova was the source of the "leak."[1] Without evidence that any of Mr. Bill's current attorneys have violated the protective order—which the Government has not presented—the Government simply has not carried its burden to demonstrate the "good cause" necessary to limit his counsel's use of the discovery in this case in the manner they deem most effective to further Mr. Bill's defense. For that reason, and the others described below and in Mr. Bill's sealed response, the Government's motion to amend the protective order should be denied.

## DISCUSSION

### I. The Government Has Not Demonstrated "Good Cause" for Its Requested Amendment to the Protective Order

#### A. The Government Has Not and Cannot Establish "Good Cause" for Precluding Ms. Karlikova from Having Access to the Discovery in Mr. Bill's Case

As the Government forthrightly acknowledges, it bears the burden of showing "good cause" to restrict the defense's use of discovery in Mr. Bill's case. *United States v. Ladeaux*, 61 F.4th 582, 585 (8th Cir. 2023) (quoting Fed. R. Crim. P. 16(d)(1)). But the Government's attempt to meet that burden has fallen woefully short. "Good cause requires a 'particularized, specific showing.'" *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (quoting *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012)). Despite having a third opportunity to present facts sufficient to justify the remedy it seeks, the Government has yet again failed to provide this Court with any evidence that Ms. Karlikova is responsible for any "leaked" discovery, or that restricting her access to discovery will remedy the concerns of both parties and this Court regarding the emails received from the anonymous informant.

[1] Notably, the Government does not address this problem with its theory either in its reply (Doc. #271) or in its supplemental brief (Doc. #285).

The undersigned do not dispute that the anonymous informant has somehow come to possess evidence in the Government's possession, and the undersigned share the Government's desire to investigate and ascertain the veracity of the (largely exculpatory) information presented in the anonymous informant's communications. But contrary to the Government's unsupported allegations, Ms. Karlikova has consistently affirmed that she has not shared any discovery provided to her with anyone beyond those permitted by the protective order. *See* Resp. (Doc. #268) at 13 (explaining that Ms. Karlikova has agreed to be bound by the terms of the Amended Protective Order and has no knowledge regarding the anonymous informant). In fact, Ms. Karlikova has gone as far as having her computers checked for potential hacking activity to ensure that her devices are as secure as possible. Yet, for reasons unknown to the undersigned and not disclosed to the Court, the Government seems to have reached the conclusion that Ms. Karlikova must be the source of the anonymous informant's information, all while discounting equally or more plausible explanations. *See* Mot. to Amend (Doc. #258) at 12 (acknowledging that the anonymous informant has asserted that information came from Ms. Droscova's "leaky" computer); Resp. (Doc. #268) at 13 (providing alternative explanations that the Government has failed to address); *see also* Supp. Br. (Doc. #285) at 3–4 (claiming "good cause" without addressing any potential alternative explanations offered by the undersigned or the anonymous informant). This Court, however, cannot rely merely on the Government's suspicions; it is the Government's burden to demonstrate that some evidence justifies restricting the undersigned's sharing of information produced by the Government with Ms. Karlikova.

As this Court is well aware, Mr. Bill had numerous other attorneys prior to the undersigned's appearance in this case in December 2024 (Doc. #142). Mr. Bill was indicted almost a year earlier, and the Government produced discovery materials not only to the undersigned, but

to Mr. Bill's prior attorneys as well. Indeed, according to the anonymous informant's claims in his emails, the information he had obtained came from the "leaky" computer of Mr. Bill's prior counsel, Ms. Droscova. *See* Mot. to Amend (Doc. # 258) at 12; Resp. (Doc. #268) at 13. Yet despite the informant's own statements as to the source of his information, the Government attempts, without evidence, to blame Ms. Karlikova, without grappling with any potential alternative explanations.

Because the Government has not demonstrated that Ms. Karlikova is the source of any "leak" of supposed confidential information, it also cannot establish that restricting Ms. Karlikova's access would do anything to mitigate the Government's concerns regarding the confidentiality of its productions. To the extent that the anonymous informant has already gained access to any discovery previously produced by the Government, amending the order will not undo that. And the Government has given the Court no reason to think that precluding Ms. Karlikova's access to discovery would prevent the anonymous informant from continuing to send the Government emails using the information already at his disposal. Given these failures, the Government has simply not carried its burden to show "good cause" to restrict Ms. Karlikova's access to discovery in this case.[2]

[2] The Government's supplemental brief describes the informant's emails as "threatening communications," claiming that the informant "has threatened members of the investigative and prosecution team." Supp. Br. (Doc. #285) at 4, 6. Though the informant oftentimes resorts to name-calling and repeatedly critiques the investigation completed by both the Government ***and*** Mr. Bill's defense counsel, the undersigned is not aware that the informant has threatened to attack or otherwise cause harm to any member of the prosecution team. The only "threat" the Government identifies in its briefing was a threat to disrupt the Government's case by sending exculpatory evidence on the eve of trial. Supp. Br. (Doc. #285) at 6. To the extent that the informant has sent communications threatening physical harm to members of the prosecution team, those communications have not been produced to Mr. Bill's counsel.

**B. The Government Has Not Established "Good Cause" for Limiting the Disclosure of Discovery in the First Instance**

As explained above, the Government has not established "good cause" for denying Ms. Karlikova access to the discovery in this case. But the Government's request to amend the protective order also wrongly assumes that the Government has provided "good cause" for designating the nearly all of its prior productions "confidential" in the first place.

Federal Rule of Criminal Procedure 16(d) requires "good cause" to restrict a defendant's use of discovery in any respect. Although Mr. Bill previously relieved the Government of its burden of demonstrating "good cause" by agreeing to the entry of the amended protective order, that order specifically reserves to each party the right to object to one another's confidentiality designations. *See* Order (Doc. #149) ¶ 13. To the extent that the Government seeks to deny Ms. Karlikova access to the discovery on the basis that the information in its productions is "confidential," Mr. Bill objects to that request.

The Government's initial motion for protective order (Doc. #56) does not provide a sufficient basis for its decision to designate effectively the entirety of its productions in this case as "confidential." While the undersigned agrees that documents containing "personally identifiable information" or "law enforcement sensitive materials" may warrant a particular document being labeled "confidential" or subject to redaction before being used in court, the Government has not presented a plausible justification for designating over 12 terabytes of discovery as so "confidential" as to preclude its being shared with Ms. Karlikova. Indeed, much of the evidence the Government has produced is from devices that were seized from Mr. Bill when he was arrested at Newark International Airport, and the Government provides no reason to suggest that evidence obtained from those devices contain sensitive information that the Government has any need to protect from disclosure to Ms. Karlikova or others.

Nor has Government explained how the disclosure of information produced in discovery to Ms. Karlikova would result in the wrongful dissemination of information that the Government has any legitimate interest in keeping confidential. Thus, this Court should not entertain any unconsented restriction on Ms. Karlikova's access to the discovery the Government has produced, especially since the Government has failed to show that the materials in question are "confidential" in the first instance.

## II. Restricting Ms. Karlikova's Access to Discovery Would Be Fundamentally Unfair and Deeply Prejudicial to Mr. Bill's Defense

Rather than present evidence of any misconduct by Ms. Karlikova that might justify restricting her access to the discovery in this case, the Government attempts to shift the burden to Mr. Bill to show that he has a Sixth Amendment right to have Ms. Karlikova assist in his defense. Supp. Br. (Doc. #285) at 5–7. In doing so, it attacks a strawman, claiming that Mr. Bill does not have a Sixth Amendment right to have Ms. Karlikova, who is not licensed to practice law in the United States, as his counsel of record—a claim Mr. Bill has never made.

In misconstruing Mr. Bill's right to enlist Ms. Karlikova's assistance in the defense of his case, the Government misconstrues and dilutes the Sixth Amendment rights at issue. Even if Mr. Bill does not have a Sixth Amendment right to retain Ms. Karlikova as his counsel of record, he has a separate and independent right to ***effective*** assistance, which denying Ms. Karlikova access to discovery would imperil. *See Strickland v. Washington,* 466 U.S. 668, 686 (1984) ("Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."). And as the undersigned has previously explained, Ms. Karlikova has served and continues to serve an essential function in assisting Mr. Bill and the undersigned in understanding and interpreting the voluminous foreign language discovery produced by the Government. *See* Resp. (Doc. #268) at 13–14.

The Sixth Amendment likewise imposes upon the government "an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel," *Maine v. Moulton*, 474 U.S. 159, 171 (1985), and "prohibits the government from impeding the supply of defense resources . . . absent justification," *United States v. Stein*, 541 F.3d 130, 156 (2d Cir. 2008). "In a nutshell, the Sixth Amendment protects against unjustified governmental interference with the right to defend oneself using whatever assets one has or might reasonably and lawfully obtain." *Id.* While interference in the defendant's relationship with his counsel may be justified to prevent certain conflicts of interest, *id.*, or to seize tainted funds that the defendant had earmarked for his defense, *United States v. Lacey*, 378 F. Supp. 3d 814, 819 (D. Ariz. 2019), neither of those justifications is present here. Thus, just as the Government's conclusory allegations cannot show good cause under Rule 16(d), they also cannot justify "plac[ing] restrictions on the dissemination of discovery . . . to third parties who are assisting defendant's attorneys of record," as the Government requests. *See* Resp. (Doc. #285) at 7.

Ignoring these well-established principles, the Government incorrectly relies on *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), which focused on a defendant's separate and distinct right to choose his counsel of record. In *Gonzalez-Lopez*, the Supreme Court recognized that trial courts may exercise "wide latitude" to balance the Sixth Amendment right to counsel of choice against "the needs of fairness" and "the demands of [the court's] calendar," while also adhering to its "independent interest in ensuring" that the attorneys appearing before it respect their ethical obligations and the proceedings "appear fair to all who observe them." *Id.* at 152 (citation omitted). Those concerns are undoubtedly important. But those concerns all weigh in favor of denying the Government's motion in this case.

Throughout this case, Ms. Karlikova has served as a valuable asset to Mr. Bill's defense. In addition to use her familiarity with the Slovak language to understand voluminous foreign language discovery, Ms. Karlikova, with her legal expertise, has the ability to assess and analyze the foreign language discovery and provide information and analysis to both Mr. Bill and undersigned. *See* Resp. (Doc. #268) at 13–14.[3] She also serves as a critical conduit for the undersigned's communications with Mr. Bill, allowing unfamiliar legal concepts to be interpreted for Mr. Bill in his native tongue. *See id.*

The Government suggests that Mr. Bill should simply have Ms. Karlikova replaced with another Slovakian attorney. *See* Supp. Br. (Doc. #285) at 7. But at this late stage in the case, forcing Mr. Bill and his defense team to retain another qualified foreign attorney to redo all of the work Ms. Karlikova has already performed would only serve to delay the resolution of this case and significantly impair Mr. Bill's constitutional right to craft his defense. As this Court knows, even finding a Slovak-English interpreter is a tall order—the challenge of replacing an attorney who has been so instrumental to Mr. Bill's defense and has, by far, the greatest familiarity with the foreign-language discovery produced in this case, is all but insuperable.

The Government has put forth no evidence suggesting that Ms. Karlikova's involvement raises ethical concerns or challenges the fairness of the proceedings before this Court. If anything, Ms. Karlikova's involvement ensures Mr. Bill can have robust and well-resourced defense team to represent him and is able to fully participate in his own representation. Thus, to the extent that

[3] The Government claims that it is "unclear it is not clear what type of law [Ms. Karlikova] practices." Resp. (Doc. #285) at 5. Ms. Karlikova has been practicing law, including criminal law, for more than 14 years, and her experience in criminal law matters dates back to her time as a law clerk. And just like any attorney licensed in this country, she is bound to similar obligations of confidentiality—including obligations under the protective order, which she has accepted as a recipient of discovery in this case.

the Court gives any consideration to the Sixth Amendment in assessing whether the Government has established "good cause" to deny Ms. Karlikova the ability to assist in Mr. Bill's defense, such consideration should weigh heavily in favor of denying the Government's motion.[4]

## CONCLUSION

As the Government itself acknowledges, the Court's power to limit the defense's use of the discovery produced only arises if the Government shows "good cause." Here, the Government has not even established good cause for designating any portions of the discovery "confidential" in the first place, let alone for limiting the ability of the undersigned to seek the assistance of Ms. Karlikova to assist them in communicating with Mr. Bill and interpreting the voluminous foreign language discovery produced by the Government. Neither this Court nor the Government should be put in the position of having to micromanage how Mr. Bill's counsel of record choose to conduct the defense of his case, or whose assistance they enlist in doing so. Granting the Government's request would improperly interfere with the defense of Mr. Bill's case and severely impair his counsel's ability to provide him with the effective representation guaranteed to him by the Constitution, based on little more than the Government's uncorroborated suspicions. For those reasons, Mr. Bill respectfully requests that the Court deny the Government's motion to deprive Mr. Bill of Mr. Karlikova's assistance in the defense of his case.

---

[4] The Court asked the parties to provide supplemental briefing whether Ms. Karlikova should be considered part of the "defense team" for purposes of the Government's motion. The Government's brief does not directly address that question, and for good reason—the undersigned have located no authority limiting a defendant's use of discovery materials on the basis of a formalistic determination as to whether or not the party to whom disclosure is made is considered part of the "defense team." Rather, as explained above, Mr. Bill's right to use the discovery produced by the Government is not limited to sharing it with his "team": he may make any use of discovery permitted under the Federal Rules unless the Government demonstrates "good cause," and any Government effort to restrict his counsel's use of discovery in the manner them deem best to further his defense implicates Mr. Bill's Sixth Amendment rights.

Dated: October 31, 2025

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*

RICHARD E. FINNERAN, #60768MO
HANNAH WISSLER DEMAND, #74911MO
MADELINE A. DERANGO, #76595MO
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
T: (314) 259-2080
F: (314) 259-2020
richard.finneran@bryancave.com
hannah.demand@bryancave.com
madeline.derango@bryancave.com

*Attorneys for Defendant Alan Bill*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October 2025, a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's CM/ECF filing system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN