UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cr-714 CMS |
| | ) |
| ALAN BILL, | ) |
| | ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Alan Bill, represented by defense counsel Saurish Appleby-Bhattacharjee, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the Superseding Indictment (Conspiracy to Distribute Controlled Substances), the Government agrees to move for dismissal as to Counts 2 through 11 at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to (i) the defendant's conduct relating to

1

Kingdom Market ("Kingdom") occurring between March 2021 and December 2023 and (ii) the defendant's conduct relating to obstruction of justice, removal of property to prevent forfeiture, and money laundering occurring between July 2024 and October 2025, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to:

a. The following assets seized on December 19, 2023, from a cryptocurrency wallet using a specified 12-word recovery phrase, which started with "CLOUD" and ended with "SURE":
   a. 18,231.686 Cardano (ADA)
   b. 33,016,383 Shiba Inu (SHIB)
   c. 58.219377 Dai (DAI)
   d. 0.02081758 Ethereum (ETH)
   e. 33.956525 Tether USD (USDT)

b. Trezor Model T device, including any assets stored on the device, seized on December 14, 2023; and

c. The following domains:
   a. Kingdommarket.live; and
   b. Kingdommarket.so.

3. **ELEMENTS:**

As to Count 1, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) Between March 2021 December 2023, two or more persons reached an agreement or came to an understanding to distribute controlled substances, to wit, fentanyl and actual methamphetamine, both being Schedule II controlled substances;

(b) That the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time while it was still in effect;

(c) At the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and

(d) The amount of actual methamphetamine involved in the offense and attributable to the defendant as a result of his own conduct, and the conduct of others reasonably foreseeable to him, is 5 grams or more.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Kingdom Market ("Kingdom") was a darknet marketplace that operated online between March 2021 and December 2023. Users could create anonymous or semi-anonymous accounts on Kingdom. After creating such accounts, Kingdom users could sell and buy illegal goods and services to and from other users on the marketplace. Kingdom's online marketplace was only

3

accessible through The Onion Router ("Tor") and the Invisible Internet Project ("I2P'), which are services that encrypt the Internet Protocol ("IP") addresses of its underlying servers and the users of the marketplace. Vendors on Kingdom advertised and sold drugs (including fentanyl and methamphetamine), stolen financial information and identification documents, and other illegal goods and services to buyers all over the world.

Kingdom only allowed its users to pay with cryptocurrency for purchases on the marketplace; specifically, bitcoin, Litecoin and Monero. Kingdom operated on an escrow system, wherein marketplace users registered directly with Kingdom and deposited cryptocurrency into a cryptowallet controlled by Kingdom, from which Kingdom subtracted a commission fee whether or not a user engaged in further transactions on the marketplace. Separately, when a user's purchase from a particular vendor was completed, Kingdom transferred the proceeds to the vendor's account.

Beginning in or around July 2022, and continuing through November 2023, the Government made undercover buys from various vendors on Kingdom and had the purchased items shipped and delivered to the Eastern District of Missouri. These undercover buys were for: (i) Personal Identity Information (PII) of individuals, whom the Government later confirmed were real persons, purchased from Kingdom users Goldapple, Fraudbuddy, and Fraud Friend; (ii) N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl) and methamphetamine, both Schedule II Controlled substances, purchased from Kingdom users TOMORROWLAND, Joyinc, and Ceasars Palace; and (iii) a United States passport, purchased from Kingdom user Dannyboys.

On or about December 14, 2023, defendant ALAN BILL ("Defendant"), a Slovakian national, flew with his wife from Vienna, Austria, to Newark, New Jersey. During the customs inspection at the Newark airport, the Government seized from Defendant's person and luggage

4

two cellular telephones, a laptop, a thumb drive, and a Trezor device.[1] From these devices, and other investigative methods, the Government obtained evidence of Defendant's communications with others about Kingdom, Defendant's use of or access to certain Kingdom usernames, and Defendant's cryptocurrency transactions with cryptocurrency wallets that were attributed to or associated with Kingdom based on the Government's investigation.

Defendant admits that, between approximately March 2021 and December 2023, he: (i) received cryptocurrency from a cryptocurrency wallet that was attributed to or associated with Kingdom based on the Government's investigation; (ii) assisted with the creation of Kingdom's forum pages on websites such as Reddit and Dread; (iii) had access to Kingdom usernames that made postings on behalf of Kingdom on social media accounts; and (iv) communicated with others regarding certain Kingdom transactions.

Between approximately March 2021 and continuing through December 2023, in the Eastern District of Missouri and elsewhere, Defendant conspired with others to commit the offense of conspiracy to distribute controlled substances. Defendant knew the purpose of the agreement and conspiracy and he knowingly joined it while it was in effect.

Defendant admits that he knew Kingdom existed, that he knowingly and intentionally agreed to assist others in maintaining or operating Kingdom by providing or procuring web-administration services as discussed herein, and that he was aware that Kingdom was an online marketplace where vendors and buyers could distribute, and cause the distribution of, controlled substances, including fentanyl and methamphetamine. Defendant acknowledges that the total amount of controlled substances involved in the offense has a converted drug weight of at least

---

[1] A Trezor device is a type of "hardware wallet" used to store a user's cryptocurrency private keys.

292.330 kilograms, including the Government's controlled buy of more than 5 grams of actual methamphetamine on the Kingdom marketplace, which occurred on or about October 10, 2023. It is Defendant's position that he never personally sold or purchased controlled substances on Kingdom, or directly profited from the sale or purchase of controlled substances on Kingdom.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 40 years, a fine of not more than $5,000,000.00, or both such imprisonment and fine. The Court must also impose a period of supervised release of not less than five (5) years.

**The defendant fully understands that the crime to which a guilty plea is being entered, requires a mandatory minimum term of imprisonment of at least 5 years pursuant to Title 21, United States Code, Section 841(b)(1)(B).**

In the event Defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, Defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

## 6. U.S. SENTENCING GUIDELINES (2025 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

  a. **Chapter 2 Offense Conduct:**

   (1) **Base Offense Level:** The parties disagree on the base offense level for Count 1. The parties agree that the base offense level is at least **24** pursuant to Section 2D1.1(a)(8)

because the total converted drug weight of the controlled substances purchased by the Government is 292 KG for controlled buys. It is the Government's position that the base offense level is at least **32** pursuant to Section 2D1.1(a)(4). Based upon the known evidence and including relevant conduct, the Government maintains that the defendant is accountable for at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight.

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: **2** levels should be added pursuant to Section 2D1.1(b)(7) because the defendant, or a person for whose conduct the defendant is accountable under Section 1B1.3, distributed a controlled substance through mass-marketing by means of an interactive computer service.

b. **Chapter 3 and 4 Adjustments:**

(1) **Acceptance of Responsibility:** The parties recommend that **2** levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct **1** additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the

court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Adjustment for Certain Zero-Point Offenders:** The parties disagree as to the defendant's eligibility for the **2** level deduction under Section 4C1.1(a) whether or not the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A. It is the Government's position that the defendant does not meet the criteria under Section 4C1.1(a)(10) because he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. It is the defendant's position that 2 levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

(3) **Safety Valve:** The parties disagree as to the defendant's eligibility for the **2** level deduction under Sections 2D1.1(b)(18) and 5C1.2(a)(1) through (5). It is the Government's position that the defendant is not eligible because he was an organizer, leader, manager or supervisor of others in the offense, as determined under the sentencing guidelines. It is the defendant's position that the defendant may be eligible for a 2 level reduction if he satisfies all criteria set forth in Sections 2D1.1(b)(18) and 5C1.2(a)(1) through (5). The parties agree that, as of the date of this plea agreement, the defendant has satisfied the criteria set forth in Section 5C1.2(a)(2) and (3). The defendant understands that his eligibility for this reduction is based on his satisfaction of all criteria set forth in Section 5C1.2(a) by the date of sentencing.

(4) **Aggravating Role:** It is the Government's position that **4** levels should be added pursuant to Section 3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. It is the defendant's position that this enhancement does not apply.

      **c. Estimated Total Offense Level:** It is the Government's position that the Total Offense Level is **35**. It is the defendant's position that the Total Offense Level is **23**, unless a two-level reduction under Section 4C1.1(a) applies based on the Court's determination of the defendant's criminal history (reducing the Total Offense Level to **21**), and that he may be eligible for an additional two-level reduction under Section 5C1.2 (reducing the Total Offense Level to **19**).

      **d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

      **e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

      **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** Defendant may appeal the calculation of his Total Offense Level where either (i) the Court calculates his Total Offense Level to exceed Level 21, Defendant has not attempted to satisfy the criteria set forth in U.S.S.G. § 5C1.2(a)(5) before sentencing, and the Court imposes a sentence higher than 60 months' imprisonment, or (ii) the Court calculates his Total Offense Level to exceed Level 19 and Defendant has attempted to satisfy the criteria set forth in U.S.S.G. § 5C1.2(a)(5) before sentencing. The Government may appeal the calculation of Defendant's Total Offense Level if the Court calculates his Total Offense Level to be less than 35. In addition to any preserved appellate rights relating to the Total Offense Level, Defendant preserves the right to appeal the application of the Section 3553(a) factors if the Court imposes an upward variance. The Government preserves the right to appeal the application of the Section 3553(a) factors if the Court imposes a downward variance. The parties waive their right to appeal all other sentencing issues.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought

under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

    d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

 **e. Possibility of Detention:** The defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

 **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

 **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

    a.    The following assets seized on December 19, 2023, from a cryptocurrency wallet using a specified 12-word recovery phrase, which started with "CLOUD" and ended with "SURE":
        a. 18,231.686 Cardano (ADA)
        b. 33,016,383 Shiba Inu (SHIB)
        c. 58.219377 Dai (DAI)
        d. 0.02081758 Ethereum (ETH)
        e. 33.956525 Tether USD (USDT)

    b.    Trezor Model T device, including any assets stored on the device, seized on December 14, 2023; and

    c.    The following domains:
        a. Kingdommarket.live; and
        b. Kingdommarket.so.

The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a

reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

1/27/2026
Date

_____
KYLE T. BATEMAN, #996646DC
Assistant United States Attorney

27.1.2026
Date

_____
ALAN BILL
Defendant

1/27/2026
Date

_____
SAURISH APPLEBY-BHATTACHARJEE
Attorney for Defendant

16